**Robert J. BRAUN, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 683S234.

Supreme Court of Indiana.

June 28, 1985.

Ralph Ogden, M. Anne Wilcox, Denver, Colo., for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of rape, a class A felony, Ind.Code § 35–42–4–1 (Burns 1979 Repl.), criminal deviate conduct, a class A felony, Ind.Code § 35–42–4–2 (Burns 1979 Repl.), burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns 1979 Repl.), and robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1979 Repl.). He was sentenced to forty (40) years imprisonment. The sole contention raised on this direct appeal is the sufficiency of the evidence to establish that Defendant was the perpetrator of the crimes.

### ISSUE I

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of witnesses." (citations omitted.)

*Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. Moreover, a conviction for rape or criminal deviate conduct may be sustained by the uncorroborated testimony of the victim. *See, e.g., Smith v. State* (1985), Ind., 474 N.E.2d 71, 73; *Ives v. State* (1981), 275 Ind. 535, 418 N.E.2d 220, 223.

The record reveals that at about 6:00 a.m., July 20, 1981, the Proxecutrix drove her husband to a friend's home, where he was to begin an excursion with a Boy Scout troop. Upon returning to her home, she was accosted by a man holding a quilt over the lower part of his face. After about five seconds, he covered her with the quilt. He then threatened her with a knife and led her through the house, taking various items, as they proceeded. He bound her

and went through the house again. He continually inquired concerning the possession of cameras and other valuables. After taking possession of some money, jewelry and other small items of value, the assailant tied the Prosecutrix to her bed, raped her and forced her to commit fellatio, vaginal intercourse and other sexual acts.

Defendant claims that the Prosecutrix saw only his upper face and but for a few seconds, that the lighting in the room was poor, that corroborating evidence presented by other witnesses was merely circumstantial, and that, accordingly, the State did not establish that he was the assailant. However, the record includes substantial probative evidence that it was the Defendant who committed these crimes, and we accordingly reject his contention.

Although, as Defendant claims, the Prosecutrix saw only his upper face and that but for a few seconds, she unequivocally identified him from a photographic array and at trial. The State presented one Hupp, a friend of Defendant who regularly bought and sold second-hand jewelry, who testified that there was "a possibility" that he had purchased a broach, which had been taken during the criminal episode. Defendant's brief emphasizes that this testimony is uncertain and speculative, however, it ignores the testimony of Lt. Moore of the Marion County Sheriff's Department revealing that when he first interviewed Hupp, he stated that he had recently purchased several items from Defendant, and that he still had one of them. Lt. Moore further testified that this item was forwarded to police by Hupp's attorney, and that it was identified as a broach that had been taken from the Prosecutrix's home by her assailant.

The State also presented testimony at trial from the Prosecutrix's paper delivery boy that he had observed a man who fit Defendant's description approach the home on the morning that the crimes were committed. At trial, he identified the photograph of Defendant and one other photograph in the array as resembling the man he saw that morning. A detective then testified that when she first interviewed the boy, shortly after the crimes had occurred, he identified the photograph of Defendant as most resembling the man he had seen approach the house, and had assisted police in preparing a composite sketch.

The delivery boy also testified that he had seen a "maroonish-red" automobile parked near the Prosecutrix's home the same morning, and State's witness, Walls, a neighbor of Prosecutrix, testified that he had observed an unfamiliar maroon-colored vehicle parked in the neighborhood that morning. Mr. Walls alertly recorded, as the vehicle's license number, Indiana 49 V 9418. On August 4, two weeks following the assault, another neighbor, Mr. Guinther, observed a maroon-colored automobile parked in the neighborhood. He recorded its license number as Indiana 49 N 9418, and spoke briefly with the driver, whom he identified as the Defendant. Subsequent police investigation revealed that the 49 V 9418 number had been assigned in 1980 to a green automobile owned by persons who later moved to another state, and assigned in 1981 to a brown automobile. However, the 49 N 9418 number had been registered in 1981 to a burgundy automobile owned by the Defendant.

▪ From the foregoing related evidence, the jury could have reasonably concluded that Mr. Walls had erroneously identified the letter "N" in the license plate number as a "V", that Defendant's automobile was parked near the Prosecutrix's home on the morning of the attack, and that Defendant returned to the same neighborhood on August 4, 1981.

Thus the record includes considerable evidence from which the jury could have reasonably concluded that Defendant was guilty as charged. We find no error, and the judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

HUNTER, J., not participating.